FILED

JUN 24 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
         DEPUTY CLERK

Sandra Haaar #77543-097
█████████████
Merced, CA 95348
Sandy.Haar@gmail.com
(209) 201-4539

Petitioner, *pro se*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                                Plaintiff,<br><br>    v.<br><br>SANDRA HAAR,<br><br>                                Defendant. | Case No.     1:20-CV-01629<br>Criminal No. 1:18-CR-155-JLT-SKO<br><br>**DEFENDANT'S REPLY BRIEF TO GOVERNMENT OPPOSITION TO §2255 MOTION [Doc. 81]**<br><br>Date: No Hearing Calendared |
|---|---|

COMES NOW SANDRA HAAR, appearing before this Court in *pro se*, respectfully submitting this reply to the government's opposition response regarding my Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to Title 28 U.S.C. §2255 (hereafter "§2255 Motion"). [Doc. 61].

## I. Procedural Notes

The originating §2255 motion was filed on November 17, 2020, but was held in abeyance pending the outcome of an appeal pending before the Ninth Circuit concerning a request for Compassionate Release under 18 U.S.C. §3582(c)(1)(A).

In that appeal, the decision of this Court was affirmed. See *United States v. Haar*, No. 20-10272 (9th Cir. 2020). I moved this Court to both bring the §2255 out of abeyance and to remove then-counsel Amanda Moran as counsel of record to allow me to proceed *pro se* in this matter [Docs. 71 & 72].

The supplemental brief which augmented my §2255 Motion was filed on December 20, 2021. Doc. 75. My case was then reassigned from Hon. Judge Dale A. Drozd to the Hon. Judge Jennifer L. Thurston on January 13, 2022 and After several extensions, the government filed its opposition on April 29, 2022. Doc. 81.

In the briefing schedule ordered (as part of the order granting my request to proceed *pro se)*, the government was given 60-days to file their response in opposition to the §2255 Motion, and I was then given 60 days after that filing to submit a reply. Thus, this filing is timely made on or before June 28, 2022.

## II. Change of Custody and Mootness Concerns

Between the time I filed the supplemental brief and the government's submission in opposition, I was transferred under the CARES Act into home confinement custody. I am still "in custody" of the Bureau of Prisons (BOP), but for health reasons, I am completing the remainder of my incarceration term at home here in California.

The issue of my custody status was not raised by the government, but warrants discussion out of an abundance of caution. The phrasing of §2255(a) requiring a petitioner be "in custody" does not mandate a petitioner be in a physical prison. The Supreme Court has "liberally construed" the meaning of "in custody" for the purposes of *habeas* review. See *Maleng v. Cook*, 490 U.S. 488, 492 (1989). Later, the Supreme Court extended this interpretation to permit offenders released from prison, and serving a term of supervised

release, to file or continue §2255 proceedings. See, *inter alia, Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002), *Hensley v. Municipal Ct.*, 411 U.S. 345 (1973).

My custody status is somewhere in between prison and supervised release. Technically, my custody is akin to those in halfway house placement because my remaining sentence custody is still administered by the BOP. Specifically, the Sacramento Residential Reentry Management (RRM) office. Thus, my physical placement at my home in Merced does not render this action moot, and I am still an inmate in prison from a custody standpoint.

Further, because the relief sought here would compel the government to move the Court for a reduced sentence, my current status in home confinement does not implicate mootness concerns. *Mujahid v. Daniels,* 413 F.3d 991, 995 (9th Cir. 2005).

### III.   Reply to Government Opposition

The government's brief opposing my arguments for *habeas* relief, including exhibits, runs a total of 246-pages. It argues that the government did not breach the plea agreement's terms, that counsel was not ineffective, that the government did not violate *Brady*, that my plea was voluntary, and that I waived any right to argue ineffective assistance of counsel (hereinafter "IAC) in any future appeal.

### A)   Plea, Appeal Waiver, and Non-Waivable Claims

It is established precedent in the Ninth Circuit that appellate waivers are enforceable on direct appeal. *United States v. Jeronimo,* 398 F.3d 1149 (9th Cir. 2005). This extends to the waiver of right to collaterally attack the length of a sentence. *United States v. Pruitt,* 32 F.3d 431 (9th Cir. 1994).

The government cites the appeal-waiver portion of my plea agreement in this case. Opposition Brief at 30. That provision barred any claim under Title 28 U.S.C. §2255 or §2241 "except for non-waivable claims." *Id.* My waiver neither expressly includes or excludes a claim of ineffective assistance of counsel.

The government assumes that waiver is implicit with the included "non-waivable claims" clause. Non-waivable claims include appeal waivers made involuntary, and that ineffective assistance of counsel *rendered* the waiver involuntary. *Washington v. Lampert*, 422 F.3d 864 (9th Cir. 2005).[1]

"We enforce collateral attack waivers that are knowing and voluntary." *United States v. Abarca,* 985 F.3d 1012, 1014 (9th Cir. 1993), but appeal waivers are *not* enforced when the government breaches the plea agreement. "A defendant is released from his or her appeal waiver if the government breaches the plea agreement." *United States v. Hernandez-Castro,* 814 F.3d 1044, 1045 (9th Cir. 2016).

### B) Ineffective Assistance of Counsel is a Non-Waivable Claim

The government cites a few local, non-binding, cases wherein specific appeal waivers were enforced with regard to subsequent IAC claims but attempts to conceal (within a lot of case discussion) that no controlling authority is cited. Partially at issue here is (1) whether a general waiver of collateral attack includes any and all IAC claims and, (2) whether such a waiver is enforceable.

The Opposition Brief does not cite a single Circuit precedent that declares a general waiver of the right to collaterally attack a sentence includes IAC claims. That is because the Ninth Circuit has not done so. Waivers, like mine, *have been* enforced to include IAC claims, but the fact of the matter is that there is no binding precedent declaring this.

An important argument here is simple: a defendant cannot knowingly or voluntarily enter into a plea agreement with an explicit or implicit IAC collateral-attack waiver. This argument is made in three parts:

> "The first is the belief that a defendant cannot knowingly waive the right to raise a claim if the basis of the claim is unknown to him at the time he agrees to the waiver. The second is the concern that in order to be knowing and voluntary, a plea or waiver requires advice from competent counsel. Coupled with this is a third concern: that any

---

[1] "Claims that the plea or [appeal] waiver itself was involuntary or that ineffective assistance of counsel rendered the plea or waiver involuntary, however, may not be waived." *Id.* at 871.

> attorney who counsels a client to waive his right to claim ineffective assistance is, necessarily, constitutionally ineffective." Nancy J. King, *Plea Bargains that Waive Claims of Ineffective Assistance – Waiving Padilla and Fry;* 51 Duquense Law Review 647 (2013)

Relevant to points two and three above, defense counsel violates their ethical obligation to their client when advising them to enter a guilty plea that waives IAC rights.

> "Defense counsel should not accept disposition agreement waivers of post-conviction claims addressing ineffective assistance of counsel, prosecutorial misconduct, or destruction of evidence, unless such claims are based on past instances of such conduct that are specifically identified in the agreement or in the transcript of proceedings that address the agreement. If a proposed disposition agreement contains such a waiver regarding ineffective assistance of counsel, defense counsel should ensure that the defendant has consulted with independent counsel regarding the waiver before agreeing to the disposition." Opposing Waivers of Rights in Disposition Agreements, ABA Standard 4-6.4(a).

This position is amplified by the National Association of Criminal Defense Lawyers (NACDL).[2] Therefore, counsel is ineffective during the plea phase for presenting, advising a client to enter, or submitting on a client's behalf, any plea agreement containing a waiver (implicit or explicit) of post-conviction claims of ineffective assistance of counsel. Because this is the case, the plea agreement *necessarily* was made unknowingly and/or involuntarily.

Additionally, the Department of Justice explicitly barred the use of IAC claim waivers in plea agreements four years before my own plea agreement was drafted.[3]

> "Federal prosecutors should no longer seek in plea agreements to have a defendant waive claims of ineffective assistance of counsel whether

---

2 "NACDL's Ethics Advisory Committee, as well as the Strike Force and other committees, have again received several queries regarding a requirement in some federal plea agreements that bar collateral attacks on convictions under 28 U.S.C. § 2255. The question presented is whether it is ethical for a criminal defense lawyer to participate in such a plea agreement in the absence of an express exclusion for claims based on ineffective assistance of counsel. NACDL has determined that it is not, and believes that prosecutors may not ethically propose or require such a waiver." NACDL Ethics Opinion No. 12-02 Plea Agreements Barring Collateral Attack (2019).

3 MEMORANDUM FOR ALL FEDERAL PROSECUTORS, James M. Cole, Deputy Attorney General, Oct. 14, 2014

those claims are made on collateral attack or, when permitted by circuit law, made on direct appeal. For cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, **prosecutors should decline to enforce the waiver** when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve." *Id.*

Logically then, *any* plea agreement that contains a waiver of IAC claims on direct or collateral review are made neither knowingly or voluntarily. Defense counsel violates ethical standards by acquiescing to it. Prosecutors violate their own DOJ policy by including it and, later, enforcing it on collateral review. Therefore, one or more of the following three things are occurring here:

(1) Defense counsel assumed that the appeal waiver in my plea agreement did not include IAC claims at all (lest they would violate ABA ethical standards),

(2) The government violated their own department directive by including an implicit IAC waiver which defense counsel mistakenly presumed was part of the "non-waivable claims" clause (and, thus, committing prosecutorial misconduct); or

(3) The waiver was *not* intended to include a bar to IAC claims on collateral attack in 2018, but the government is now using the vagueness of that waiver to claim that it does.

The only reasonable conclusion here is that the my plea agreement's appeal waiver is impermissibly vague because it does not expressly include or exclude IAC claims and because the government would violate their own department policy by including any such preclusion.

    Because plea agreements are contracts,[4] governed by contract law, any vagueness in language benefits the defendant on review. "Plea agreements are interpreted using contract principles with any ambiguity construed in the defendant's favor." *United States v. Watson*, 582 F.3d 974 (9th Cir. 2009).

---

4  *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005)

### C) The Government Uses Post-Sentencing Conduct to Judge Plea Phase Cognitive Function

The government arguments about my cognitive ability to knowingly, voluntarily plead guilty are insensitive at best, and misconduct at worst. The government has no expertise in neuroscience nor neurophysiology, yet asserts that I had the mental faculties after a stroke to ascent to a guilty plea.

This argument is supported by the fact that I returned to work (in a diminished capacity, part-time), sent an e-mail, attended a meeting, submitted a declaration written by somebody else, and called banks. Opposition Brief at 26. Additionally, the government argues that I must have had a fully functioning psyche because I invoked my right to counsel, changed counsel, participated in proffers and interviews with the government, answered "yes" or "no" questions during the plea colloquy, and actively participated in my own defense as best I could at the time. Opposition Brief at 27.

The government follows this with a retelling of my participation in post-sentencing attempts to find relief in this case. *Id.* However, these arguments have no merit because they demonstrate nothing about my cognitive abilities at the plea phase, and should be disregarded.

### D) Even if Ineffective Assistance of Counsel Claims Waivers were Enforceable, the Waiver is Unenforceable Because the Government Breached the Plea Agreement

The government claims that they did not breach the plea agreement, and that counsel was not ineffective during the plea phase, because the provision in the plea agreement which compelled the government to file for a reduced sentence was "non existent." Opposition Brief at 21.

I will, once again, include the exact language of the plea agreement section which the government was bound to as much as it claims I am/was. Under section III, Government's Obligations, page 7 §§(C)(3) of the Plea Agreement, the government:

7

> "[A]grees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if she provides substantial assistance to the government, pursuant to U.S.S.G. §5K1.1."

What I did *not* include in my Supplemental Brief was the remainder of that section, which requires filing of such motion with no equivocation. "The defendant understands that the government may recommend a reduction in her sentence of less than 50% or no reduction at all; depending upon the level of assistance the government determines that the defendant has provided." *Id.*

This is the plain language of the plea agreement, the contract the government so ardently argues I must adhere to when it suits the purposes of an IAC waiver, yet labels it as "nonsensical" when mandated to abide by the same.

This clause doesn't given the government the option *not* to file for a reduced sentence if I provided substantial assistance. I did provide substantial assistance to the government, even if the government now claims the proffers, interviews, and cooperation I gave was insufficient.

These are the same proffers and interviews the government boastfully cites on pages 27 as evidence of my cognitive viability in the plea phase. This is hypocrisy. On the one hand I was competent enough to "participate in a reverse proffer at the offices of the U.S. Attorney in January 2018. Ex. 12. She was able to participate in an interview session at the offices of the U.S. Attorney in October 2018. Ex. 22." *Id.* On the other hand, though, the government:

- Speaks for me, stating I claimed to have participated in "multiple debriefs" when I said no such thing, [*Id.* at 13]
- Minimizes the same interviews/proffers that it lauded as evidence of my mental competence at plea, calling these two occasions, "one self-serving interview prior to sentencing." *Id.* And finally,
- Claims, "Haar did not provide substantial assistance in the investigation or prosecution of another person."

The government here ignores what the plea agreement, the contract which it claims was signed by both parties voluntarily and knowingly, actually required. There were five requirements placed upon me by the plea agreement in order to fulfill my end of that agreement. Supplemental Brief at 4. I fulfilled all of those requirements in good faith. However, the government impugns and minimizes my good faith participation in that process while, simultaneously, arguing it should not be required to fulfill its own side of the process.

> "'[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). A plea agreement is a contract; the government is held to the literal terms of the agreement. See [*United States v.*] *Johnson*, 187 F.3d at 1134 (citing *United States v. Baker*, 25 F.3d 1452, 1458 (9th Cir. 1994))." *United States v. Mondragon*, 228 F.3d 978 (9th Cir. 2000).

It is clear by the plain language of the plea agreement that the government breached plea by failing to make any §5K1.1 or Rule 35(b) motion for a reduced sentence. It *does not matter* that it is "nonsensical" to require that the government a motion for a 0% reduction. Opposition Brief at 14. Failing to do so breaches the plea agreement and relieves me of any obligation I had to it, including and especially the waiver appellate rights.

### E) The Plea Agreement Contradicts Itself and has no Severability Clause

Did the government, "agree[] to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50%,"?[5] Or do I have no right to "require that the government make a §5K1.1 motion, and that this plea agreement confers no remedy upon the defendant in the event the government declines to make a §5K1.1"?[6]

With a contradiction like this, it is incumbent on the Court to de-conflict these obligations and promises, finding any ambiguity in my favor. *Watson, supra.*

---

5   Plea Agreement at 7.

6   *Id.* at

9

F) **<u>Brady Implications and the Need for Evidentiary Hearing</u>**

While the government contends that it supplied my defense counsel, "with almost 200,000 pages of discovery and made hundreds and perhaps over 1,000 of boxes [sic] and computers available to [my defense counsel],"[7] no proof is offered that this inexact, broad figure constitutes all discovery. Nor does this statement offer any proof that *Brady* evidence was withheld.

All of those boxes and files were taken from clinics I ran, and there is no accounting for the totality of what was confiscated. Only a trust in the good faith of the government would compel any reasonable jurist to conclude no *Brady* violations have occurred here, and the previous sections of this brief are enough to view the "good faith" of the government here in, at best, a poor light.

The facts here are, by nature, outside the case record. Where claims resting on facts outside the record are not frivolous *prima facie,* an evidentiary hearing should be held.

> "The prisoner is entitled to an evidentiary hearing on his claim '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' 28 U.S.C. § 2255 (1988). We review for an abuse of discretion the district court's failure to hold an evidentiary hearing under §2255, but '[w]hen a defendant's allegations ... are based on facts outside of the record, an evidentiary hearing is required.'"
> *Frazer v. United States,* 18 F.3d 778 (9th Cir. 1994)

> "An evidentiary hearing is usually required if the motion states a claim based on matters outside the record or events outside the courtroom. The district court may deny a section 2255 motion without an evidentiary hearing only if the movant's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Burrows,* 872 F.2d 915 (9th Cir. 1989)

It is necessary here to hold an evidentiary hearing. Much the same way IAC claims cannot be knowingly waived "if the basis of the claim is unknown to [the defendant] at the time he agrees to the waiver,"[8] so is the nature of the *Brady* violations here.

---

7   Opposition Brief at 1
8   King, *supra.*

It cannot be fully known to me, or known at all to the Court, without an evidentiary hearing to determine what violations of *Brady v Maryland* exist. To trust the government to act in good faith here would be unreasonable.

### G) The Protections of the Plea Agreement are not Voided

Violating or withdrawing of the plea agreement would void the protections against further and/or future prosecutions contained therein. I have not withdrawn my plea, nor have I violated it. In the event I violated, withdrew, or attempted to withdraw my plea, the government could elect to void the agreement and would, "no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein."

> "A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from the stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement." Plea Agreement at 4, section II.E.

The threat of future prosecution does not end with me, though. The government threatened to go after my family if I violated the agreement or dared collaterally attack the sentence, reserving the right to:

> "bring charges against the following three individuals related to the defendant: Sara Price, Norman Haar, and Karen Tlemcami (the "listed individuals") arising from the conduct outlined in the Factual Basis attached as Exhibit A ... if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), III.C.3 (Reduction of Sentence for Cooperation), VI.B (Stipulated Guidelines Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein." Plea Agreement at 6, section III.B.

I did not violate the plea agreement, as defined in section II.E, I fully cooperated in accordance with section III.C.3. I did not vary at sentencing from the guidelines calculations stipulated in section VI.B. Lastly, this collateral attack is not barred by the appeal waiver for the reasons stated herein, and does not violate section VII.B.

Therefore, the Court should *not* find that I am, in any way, in breach of the plea agreement. The government has breached that agreement, whereas I have not.

## IV. CONCLUSION

For the reasons stated herein, the waiver of appeal right with regards to IAC claims is unenforceable and the plea containing that waiver was made involuntarily and unknowingly. For the reasons stated herein, the government breached that plea agreement by failing to file for sentence reduction.

For all these reasons, I pray this Court will:
- Find the government in breach of the plea agreement;
- Find I have not done the same;
- Order the government to file for, and justify, a 0-50% reduction in sentence pursuant to either §5K1.1 or Fed.R.Crim.P. 35(b); and;
- Call for an evidentiary hearing to determine if any *Brady* violations were committed in my case by the government.

Respectfully submitted on June 22, 2022

                                        *Sandra Haar*
                            Sandra Haaar #77543-097
                            [REDACTED]
                            Merced, CA 95348
                            Sandy.Haar@gmail.com
                            (209) 201-4539
                            Petitioner, *pro se*

1  CERTIFICATE OF SERVICE

With my signature above, I attest that I have served a true and correct copy of the foregoing brief, DEFENDANT'S REPLY BRIEF TO GOVERNMENT OPPOSITION TO §2255 [Doc. 81], upon the Court and the representative of the government at the following addresses:

| **Michael G. Tierney** | **Clerk of the U.S. District Court** |
|---|---|
| United States Attorney's Office | Eastern District of California – Fresno |
| EDCA, Fresno | Robert E. Coyle Federal Courthouse |
| 2500 Tulare Street | 2500 Tulare Street |
| Suite 4401 | Room 1501 |
| Fresno, CA 95814 | Fresno, CA 93721 |

Service has been made by placing the same in postage-prepaid envelopes into the inmate mail system to be delivered by U.S. Postal Mail on June 23, 2022